# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WISCONSIN

ESTHER M. BEARDSLEY,

        Plaintiff,

        v.                                Case No. 07-C-0776

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

## ORDER GRANTING MOTION FOR LEAVE TO FILE BRIEF EXCEEDING PAGE LIMIT (DOC. #12), DENYING MOTION TO STRIKE PLAINTIFF'S BRIEF (DOC. #14), GRANTING MOTION FOR EXTENSION OF TIME (DOC. #13), AND REVERSING DECISION OF AND REMANDING CASE TO THE COMMISSIONER

Esther M. Beardsley seeks review of the decision of the Commissioner of Social Security denying her disability insurance benefits. She claims she is disabled, that the findings and conclusion of the Commissioner are not supported by substantial evidence, and that the Commissioner's decision is contrary to law and regulation.

Beardsley applied for disability insurance benefits on January 27, 2004, alleging disability beginning May 28, 2002. The Social Security Administration denied the claim initially and on reconsideration. (Tr. 31-45.) She requested a hearing (Tr. 45), which was held July 13, 2006, before Administrative Law Judge Donald J. Willy (Tr. 522-68). At the hearing Beardsley, her husband, medical experts Drs. George Weilepp and Hubert Stuart, and vocational expert Wallace Stanfill testified. (*Id.*)

On July 28, 2006, ALJ Willy issued a decision finding Beardsley not disabled. (Tr. 15-26.) Beardsley sought review, but the Appeals Council denied the request on August 9, 2007. The Appeals Council stated

that the Administrative Law Judge incorrectly assigned controlling weight to the opinions of the medical experts who testified at your hearing, which is a level of weight reserved for treating source opinions. However, while considerable rather than controlling weight should have been accorded the opinions of the medical experts at the hearing, we have concluded that this would not change any of the Administrative Law Judge's findings in [this] case.

(Tr. 6.)

Beardsley filed her case in this court shortly thereafter.

PRELIMINARY MOTIONS

Beardsley asks for leave to file a brief in excess of the fifteen pages previously allowed by the court. She states that her brief is thirty pages in length and that she has no objection if the Commissioner wishes to file a responsive brief in excess of fifteen pages as well. The request advises that the administrative record is 566 pages long, containing a hearing transcript and extensive medical evidence. Further, it notes that the case involves "some complex issues and a great deal of background information." (Pl.'s Mot. for Leave to File Opening Br. in Excess of 15 Pages at 1.)

The Commissioner objects to the motion and has filed a motion to strike plaintiff's brief. Counsel for the Commissioner points to the lack of specificity in the plaintiff's motion, for instance regarding what the complex issues are, and focuses greatly on the frequency with which counsel for plaintiff seeks additional pages for his briefs in excess of the fifteen-page rule.

Indeed, it does appear as if plaintiff's counsel has sought to exceed the page limitation in numerous cases, although sometimes by only a few pages. In addition, this court has rejected similar requests, noting that excessive pages should be the exception

2

rather than the rule. However, the court is persuaded with due regard for the record in the present case, the motion for leave to file excess pages should be granted.

Next, the Commissioner asked for an extension of time of about a month to file his brief. Although the court did not act on the motion right away, plaintiff's counsel indicated he had no objection to the extension of time, and the Commissioner filed his brief within the time sought in the motion for extension of time. Consequently, the motion for an extension of time will be granted.

STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this court's review is limited to determining whether the ALJ's decision is supported by "substantial evidence" and is based on the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). The ALJ's findings of fact, when supported by substantial evidence, are conclusive. § 405(g). Substantial evidence is relevant evidence that a reasonable person could accept as adequate to support a conclusion. *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). This court cannot reweigh evidence or substitute its judgment for that of the ALJ. *Binion ex rel. Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). However, if the ALJ commits an error of law reversal is required without regard to the volume of evidence supporting the factual findings. *Id.* Failure to follow the Commissioner's regulations and rulings constitutes legal error. *Prince v. Sullivan*, 933 F.2d 598, 602 (7th Cir. 1991).

An ALJ must "'minimally articulate his reasons for crediting or rejecting evidence of disability,'" *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) (quoting *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir.1992)), "build[ing] an accurate and logical bridge from the evidence to his conclusion," *id.* at 872. Although the ALJ need not discuss every

3

piece of evidence, he or she cannot select and discuss only the evidence supporting the decision. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). Evidence favoring as well as disfavoring the claimant must be examined by the ALJ, and the ALJ's decision should reflect that. *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). The district court should remand the case if the ALJ's decision lacks evidentiary support or is "so poorly articulated as to prevent meaningful review." *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 785 (7th Cir. 2003) (internal quotation marks omitted). However, a "sketchy opinion" may be sufficient if it is clear the ALJ considered the important evidence and his or her reasoning can be traced. *Id.* at 787.

To obtain disability insurance benefits under the Social Security Act, the claimant must be unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505.

The Administration has adopted a sequential five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520. The ALJ must determine at step one whether the claimant is currently engaged in substantial gainful activity. If so, she is not disabled. If not, at step two the ALJ must determine whether the claimant has a severe physical or mental impairment. If not, the claimant is not disabled. If so, at step three the ALJ determines whether the claimant's impairments meet or equal one of the impairments listed in the Administration's regulations, 20 C.F.R. pt. 404, subpt. P, app. 1 (the "listings"), as being so severe as to preclude substantial gainful activity. If so, the claimant is found disabled. If not, at step four the ALJ determines the claimant's

4

residual functional capacity (RFC) and whether the claimant can perform her past relevant work. If she can perform her past relevant work she is not disabled. However, if she cannot perform past work, then at step five the ALJ determines whether the claimant has the RFC, in conjunction with age, education, and work experience, to make the adjustment to other work. If the claimant can make the adjustment, she is found not disabled. If she cannot make the adjustment, she is found disabled. 20 C.F.R. 404.1520; *see Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

RFC is the most the claimant can do in a work setting despite his or her limitations. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p; *Young*, 362 F.3d at 1000-01. The Administration must consider all of the claimant's known, medically determinable impairments when assessing RFC. § 404.1545(a)(2), (e).

The burden of moving forward at the first four steps is on the claimant. At step five, the burden shifts to the Secretary to demonstrate that the claimant can successfully perform a significant number of other jobs that exist in the national economy. *Young*, 362 F.3d at 1000.

I. Opinions of Treating Physicians and Consultative Examiner

Generally, the Administration gives more weight to the medical opinion of a source who examined the claimant than the opinion of a source who did not. 20 C.F.R. § 404.1527(d)(1). Further, because of the unique perspective of and longitudinal picture from a treating physician, his or her opinion is given "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence" in the record. 20 C.F.R. § 404.1527(d)(2); *accord* SSR 96-2p; *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). "Controlling

5

weight" means that the opinion is adopted. SSR 96-2p. A treating physician's opinion may have several points; some may be given controlling weight while others may not. *Id.* An "ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel*, 345 F.3d at 470.

An ALJ's finding that a treating physician's opinion is not entitled to controlling weight "does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator." SSR 96-2p. In determining the weight to give a non-controlling treating physician's opinion, the ALJ must consider the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the physician's evidence supporting the opinion, the consistency of the opinion with the record as a whole, the specialty of the physician, and any other relevant factors. 20 C.F.R. § 404.1527(d)(2)-(6).

The ALJ must always give good reasons for the weight given to a treating physician's opinion. 20 C.F.R. § 404.1527(d)(2); SSR 96-2p. The ALJ must give reasons "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p. An ALJ can reject a treating physician's opinion only for reasons supported by substantial evidence in the record. *Gudgel*, 345 F.3d at 470.

In *Clifford*, for instance, the ALJ did not give controlling weight to a treating physician's opinion that Clifford was severely limited in her ability to perform certain work, finding that the report was unsupported by medical evidence and inconsistent with Clifford's description of her daily activities. *See* 227 F.3d at 869-70. The Seventh Circuit

6

remanded for reconsideration of the treating physician's opinion, finding that the ALJ did not cite to any medical report that contradicted the treating physician's opinion that Clifford suffered from degenerative knee arthritis limiting her ability to walk or stand and did not adequately articulate his reasoning for discounting the opinion that she could not perform repetitive work with her hands. *Id.* at 869-71.

The weight given to nonexamining sources "will depend on the degree to which they provide supporting explanations for their opinions" and "the degree to which these opinions consider all of the pertinent evidence." 20 C.F.R. § 404.1527(d)(3). Generally, more weight is given to the opinion of a specialist regarding issues related to the area of specialty than to the opinion of a source who is not a specialist. § 404.1527(d)(5). If an ALJ asks for opinions of medical experts, those opinions are considered using these same rules. § 404.1527(f)(2)(iii). However, the decision whether a claimant is disabled is reserved to the Commissioner; a statement by a medical source that a claimant is unable to work does not mean that the Commissioner will determine the claimant to be disabled. § 404.1527(e).

Beardsley contends that the ALJ did not consider the opinions of treating physician Dr. Robert Gibson and examining physician Dr. Sullivan properly and gave too much weight to the non-examining medical experts, Drs. Weillepp and Stuart. The ALJ discussed the medical opinions as follows:

> As for the opinion evidence, the undersigned has considered the opinions of the state agency medical consultants (Exhibits 4F and 10F) and has given those opinions considerable weight. However, the undersigned gives controlling weight to the opinion of the medical expert, Dr. Weilepp, because his opinion is more consistent with the objective medical evidence of record and it gives consideration

7

to the claimant's subjective complaints resulting in additional restrictions.

The claimant's treating physician, Robert D. Gibson, M.D., completed a diabetes mellitus residual functional capacity questionnaire, which indicates that the claimant is totally disabled. He indicated that in an 8-hour working day the claimant could stand and or walk about 2 hours, sit about 4 hour[s], and occasionally lift 10 pounds. Dr. Gibson also indicated that the claimant, on average, would likely be absent from working about four days a month as a result of her impairments or for treatment (Exhibit 16F). The undersigned gives very little weight to this opinion because it is not consistent with the objective medical evidence of record. As previously mentioned in the body of this decision, EMG and nerve conduction studies revealed no evidence of radiculopathy and a doppler arterial study of both the claimant's legs demonstrated normal velocities bilaterally with no significant stenosis in either leg.

Additionally, an examination of the claimant in December 2005 revealed that although the claimant was having some back and left leg pain, she had no pain on palpation over the lumbar spine itself and there was no stepoff, crepitus or deformity. Her extremities revealed no edema or cyanosis and peripheral pulses were 2+. Neurologically, the claimant was found to have good strength in her lower extremities (Exhibit 14F, pages 6-8). Thus, the objective medical evidence of record does not support the claimant opinion [sic] of the claimant's treating physician.

The undersigned has also considered the opinions of the state agency medical consultants with regard to the claimant's mental limitations (Exhibits 11F and 12F) and has given considerable weight to these opinions. However, the opinion of the medical expert, Dr. Stuart[,] is more consistent with the objective medical evidence of record when considered in its entirety and is therefore given controlling weight.

(Tr. 24.) Dr. Stuart specialized in psychiatry, neurology, and addictionology. (Tr. 53.) Dr. Weilepp's specialty was orthopedic surgery. (Tr. 56.)

The ALJ's decision suffers from at least two errors regarding physicians' opinions. First, as stated above, the Administration generally gives more weight to the medical opinion of a source who examined the claimant than the opinion of a source who

8

did not. 20 C.F.R. § 404.1527(d)(1). The Commissioner cites no regulation or rule that supports giving "controlling weight" to the medical opinion of a non-examining source. To the contrary, SSR 96-2p states that "opinions from sources other than treating sources can never be entitled to 'controlling weight.'" Yet the ALJ gave "controlling weight" to the opinions of the medical experts who never examined Beardsley. The Appeals Council noted that the ALJ had incorrectly assigned controlling weight to the opinions of the non-examining medical experts, but "concluded that this would not change any of the Administrative Law Judge's findings in [this] case." (Tr. 6.) Although the Appeals Council may not have believed the ALJ's findings would have changed, this court concludes that the ALJ made an error of law in analyzing the case, attributing to the non-examining medical expert opinions the weight assigned ordinarily to the opinions of treating physicians.

Second, the ALJ failed to adequately reject the diagnoses and assessments of treating physician Dr. Gibson. In an RFC questionnaire, Dr. Gibson identified Beardsley's diagnosis as diabetes with neuropathy and her symptoms as fatigue, difficulty walking, muscle weakness, leg cramping, extremity pain and numbness, and loss of manual dexterity. (Tr. at 505.) Dr. Gibson indicated that Beardsley needed a job that permitted shifts from sitting to standing and walking at will (Tr. at 506) and that in an eight-hour working day Beardsley could use her hands to grasp or turn objects or her fingers to manipulate only twenty-five or thirty percent of the time and her arms to reach in front only twenty to thirty percent of the time and never overhead (Tr. at 507). He stated that she would need one or two unscheduled sixty-minute breaks during a workday, during which she would need to lie down. (Id.) According to his answers in the questionnaire, she could

9

lift ten pounds occasionally.  Further, he estimated that she would miss four days or work per month as a result of her impairments.  (Tr. at 508.)

The ALJ stated that he gave little weight to Dr. Gibson's RFC opinion "because it is not consistent with the objective medical evidence of record."  (Tr. 24.) However, the ALJ failed to address evidence that *does* support Dr. Gibson's opinion regarding leg and back pain.  The same December 2005 medical record that indicates Beardsley had no pain on palpation over the lumbar spine itself and no stepoff, crepitus or deformity, also indicates that there was "tenderness on palpation of the musculature in the left low back" and some spasm of those muscles.  (Tr. 475.)  Several medical records document spondylosis[1] or a degenerative change in the lumbar spine at the L5-S1 level (Tr. at 179, 222, 233, 237), which appear to support Dr. Gibson's opinions relating to standing, sitting, and walking.  For instance, February 2, 2004, records from Dr. Rebancos indicate that the spondylosis caused chronic low back pain with radiation to the left leg and thigh.  (Tr. 222.)  The June 20, 2003, records of a Dr. Mark Glazer note that images of Beardsley's vertebrae show spur formations and disk bulge at L5-S1.  (Tr. 233.)  A consultative examiner, Dr. Bryan Schmitt, found Beardsley would be unable to stand for prolonged periods of time.  (Tr. 354.)

Importantly, the ALJ failed to address Dr. Gibson's opinions regarding Beardsley's use of her hands and fingers or her need to take breaks and miss work, let alone the evidence supporting those opinions.  Numbness and tingling in Beardley's hands and fingers were noted in 2005 records from the Albrecht Free Clinic.  (Tr. 412.)  Dr.

---

[1]According to a medical dictionary, spondylosis is stiffening of the vertebrae or joints in the spine.  Stedman's Medical Dictionary 95, 1813 (28th ed. 2006).

10

Sullivan, who examined Beardsley, also found numbness in Beardsley's extremities, and documented Beardsley's extremity pain. He found that she had "[b]orderline sensory conductions suggestive of Diabetic poly neuropathy." (Tr. 470; *see also* Tr. 472.) Yet, the ALJ did not mention this evidence, and the only manual restriction he found in Beardsley's RFC was about overhead lifting. (Tr. 21-22.)

Instead, while discussing Beardsley's claimed problems with her legs, the ALJ mentioned only that a test had shown "no evidence of significant radiculopathy." (Tr. 23.) Beardsley's medical evidence shows diagnoses of diabetic neuropathy. (Tr. 412, 470, 474, 502, 503.) "Diabetic neuropathy" is "a generic term for any diabetes mellitus (DM) related disorder of the peripheral nervous system, autonomic nervous system, and some cranial nerves." Stedman's Medical Dictionary 1313 (28th ed. 2006). "Radiculopathy" is a "[d]isorder of the spinal nerve roots." *Id.* at 1622. To this court, a test showing no spinal nerve root problem does not discount a finding and diagnosis of a disorder in peripheral nerves, which might be those in the hands and fingers. But if it could, the ALJ needed more than his own assessment to say so. He needed to point to some medical expert testimony or evidence indicating that lack of radiculopathy suggests no hand and finger numbness or pain. The ALJ failed to adequately address why he was rejecting Dr. Gibson's and Dr. Sullivan's findings regarding hands and fingers, thus failing to support with substantial evidence his finding that Beardsley was limited only regarding no overhead lifting.

Medical records documenting Beardsley's high blood sugar levels and uncontrolled diabetes are plentiful, supporting her Dr. Gibson's opinion that she would need a substantial break each day and could miss four days of work per month. (*See, e.g.*,

11

Tr. 215, 360 (blood sugar level of 422), 223 (hemoglobin at 9.8, indicative of suboptimal glycemic control), 243 (glucose at 175, hemoglobin at 10.3), 263 (glucose at 296, hemoglobin at 10.8), 315 (hemoglobin at 8.1), 399-400 (glucose at 138, hemoglobin at 8.5), 409 (hemoglobin at 8.1), 417 (glucose at 160, hemoglobin at 9.0)., 427-28 (glucose at 216, hemoglobin at 8.8), 437-38 (glucose at 215, hemoglobin at 8.8), 492-93 (glucose at 186, hemoglobin at 8.4).[2])  A blood sugar log for Beardsley for several weeks in May to July 2006 shows numerous readings in the 200's and 300's.  (Tr. 510-20.)

Finally, in rejecting Dr. Gibson's opinion and giving it little weight, the ALJ did not discuss, as he needed to, the length of Beardsley's treatment relationship with the doctor, the frequency of the doctor's examination, the nature and extent of the treatment relationship, the physician's evidence supporting the opinion, the consistency of the opinion with the record as a whole, or the specialty of the physician.   *See* 20 C.F.R. § 404.1527(d)(2)-(6).

For these reasons, the ALJ committed an error of law and failed to support his decision with substantial evidence, requiring reversal.

## II.  Beardsley's Credibility

An ALJ must consider a claimant's subjective complaints, if supported by medical signs and findings.  *Clifford*, 227 F.3d at 871.  But, even if not substantiated by objective medical evidence, a claimant's testimony about the intensity or persistence of pain or other symptoms or their effect on his or her ability to work is not rejected as a result.  SSR 96-7p.  "[S]ymptoms sometimes suggest a greater severity of impairment than

---

[2] According to Beardley's lab reports, the normal glucose range is from 75-115 and the normal range for a hemoglobin reading is below seven.  (*See* Tr. 437-38.)

can be shown by objective medical evidence alone." 20 C.F.R. § 404.1529(c)(3). Whenever a claimant's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. SSR 96-7p. "The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints." *Scheck*, 357 F.3d at 703 (internal quotation marks omitted).

In evaluating credibility, the ALJ must comply with SSR 96-7p. *Brindisi*, 315 F.3d at 787. That ruling requires consideration of (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, that the individual has received for the relief of pain or other symptoms; (6) measures, other than treatment, that the individual uses to relieve the pain or other symptoms; and (7) any other factors concerning the individual's functional limitations due to pain or other symptoms. Further,

> [i]t is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." . . . The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p, *quoted in Brindisi*, 315 F.3d at 787.

13

A credibility finding "cannot be based on an intangible or intuitive notion about an individual's credibility." SSR 96-7p. Further, "'once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence.'" *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996)).

The Seventh Circuit remanded *Zurawski v. Halter*, 245 F.3d 881 (7th Cir. 2001), for reconsideration of the claimant's credibility regarding pain. There, the ALJ found the testimony regarding pain was not entirely credible, citing inconsistencies with the objective medical evidence but failed to further explain those inconsistencies. *Id.* at 887. Also, the ALJ had failed to discuss MRI results supporting Zurawski's complaints and the medications he had used to relieve pain. *Id.* at 888. Because the court was unable to tell whether the ALJ had examined all relevant evidence, it remanded for reevaluation by the ALJ. *Id.*

Beardsley testified at the hearing before the ALJ that she could not stand for even two hours, sitting caused her fatigue, and she needed to move. (Tr. 528.) She stated that her insulin amount had been rising. (Tr. 528-29.) Moreover, Beardsley described how in the weeks before the hearing her glucose range had been between 160 and 405 and that when her blood sugar gets that high she gets "very confused" and acts as if she's drunk. Her husband will get her to check her sugar level and then administers insulin. She then falls asleep for two hours. She stated that her blood sugar level goes over 300 every day, especially in the afternoon between 3:00 and 5:00. (Tr. 529-30, 551.) She testified that her life is organized around watching her sugar level. (Tr. 531.) A daily activities

14

questionnaire that she completed in July 2004 was consistent with this testimony regarding her high blood sugar level and need for emergency insulin. (Tr. 106.)

Beardsley added that she can do dishes for only fifteen minutes and then must sit; she shops for groceries with her husband but does not carry heavy items; and she cleans in fifteen-minute intervals then must sit. (Tr. 531-532.) Her husband does the laundry. (*Id.*) And her July 2004 daily activities questionnaire documented that doing dishes took two hours because of her back pain and laundry was too much for her to handle. (Tr. 106-07.)

The ALJ dealt with Beardsley's credibility as follows:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.
>
> Despite the claimant's allegations of being totally disabled, there is no objective medical evidence of record to support this. Furthermore, there is no objective medical evidence of record that would prevent the claimant from engaging in work activity at the light level . . . .
>
> . . . .

(Tr. 22.) Also, the ALJ found that Beardsley "is able to perform some household chores, wash dishes, and gorcery shop." (Tr. 23.)

In *Parker v. Astrue*, 597 F.3d 920 (7th Cir. 2010), the Seventh Circuit recently stated that language identical to the first paragraph above, with one immaterial variation,[3]

> is a piece of boilerplate that appears in virtually identical language in both these cases as well as in a third social security disability case argued to us the same day. It is not

_____

[3]The ALJ language quoted in Parker stated "would" instead of "could."

only boilerplate; it is meaningless boilerplate. The statement by a trier of fact that a witness's testimony is "not *entirely* credible" yields no clue to what weight the trier of fact gave the testimony.

*Id.* at 921-22. The court reversed the ALJ's denial of benefits and remanded the case to the Administration. *Id.* at 925.

Beardsley's case must be remanded because here, as in *Parker*, the boilerplate statement of Beardsley's testimony being "not entirely credible" fails to give the court any clue as to what weight the ALJ gave it; the ALJ failed to create a logical bridge explaining his consideration of Beardsley's testimony. Further, the ALJ's pronouncement that there is "no objective medical evidence of record to support" a finding of total disability ignores evidence that *does* support such a finding. For instance, the medical records described in the discussion of Dr. Gibson's opinion that document spondylosis or a degenerative change in the lumbar spine at the L5-S1 level also support Beardsley's claims of back pain. The numerous medical records documenting her high, greatly fluctuating blood sugar levels and uncontrolled diabetes noted above regarding Dr. Gibson's opinion also support Beardsley's testimony respecting confusion and need to rest most afternoons.

The ALJ failed to discuss adequately the intensity, persistence, and limiting effects of Beardsley's symptoms. *See* SSR 96-7p. He did not to discuss the various factors in SSR 96-7p, such as the frequency of her symptoms; what precipitates and aggravates them; the type, dosage, effectiveness, and side effects of her medications; or treatment, other than medication, that Beardsley has received for relief. The ALJ mentioned Beardsley's daily activities of shopping and doing dishes, but only briefly, and

16

he disregarded her testimony that she needs breaks or assistance when doing those activities.  While the ALJ mentioned SSR 96-7p, he did so only in conclusory fashion by stating that its standards had been considered rather than addressing those standards in writing.  Thus, the ALJ did not build a logical bridge between the evidence and his conclusion.  Therefore, this court agrees with Beardsley that the ALJ's decision must be reversed regarding the finding on Beardsley's credibility.

### III.  Blood Sugar Evidence and Beardsley's Husband's Testimony

Missing from the ALJ's decision is any adequate discussion of what weight he gave the other evidence regarding Beardley's greatly fluctuating blood glucose levels or any reason for disregarding the testimony of Beardsley's husband that every day her blood sugar level spikes, she becomes confused and fatigued, she repeats questions or sentences, he must give her insulin, and then she wants to fall asleep.  (Tr. 536-37.)

Nowhere did he state that he found the husband not credible.  Further, the ALJ's statement makes it sound like Beardsley's symptoms occur simply whenever her blood sugar is high, deemphasizing the important point of the husband's testimony that these symptoms occur every day.  Moreover, the ALJ offered no basis for not considering the husband's testimony in determining Beardsley's RFC.

The testimony of Beardsley's husband supports Dr. Gibson's report that Beardsley needs to take one to two long breaks each day, again showing how the treating physician evidence was not addressed properly.  Further, neither medical expert disputed the medical evidence regarding Beardsley's fluctuating blood sugar and its effects.  (Tr. 540; *see id.* 543 (Dr. Weillepp stating that he disagreed only with Dr. Gibson's RFC report). Dr. Stuart said he did not include any consideration of Beardsley's fluctuating blood sugar

17

in his opinion regarding her mental abilities. (Tr. 540.) Dr. Weillepp described Beardsley's

diabetes control as marginal. (Tr. 542.) Also, he said that a person's blood sugar could

fluctuate dramatically during a day from 100 to about 300: "I think it not infrequently does

in many situations depending upon activity and also intake and stress and circumstances

(INAUDIBLE). There's lots of variation." (Tr. 550.)

At the hearing, Dr. Weillepp stated that Dr. Gibson's notation of a need for

a sixty-minute break was "subjectively" credible. It is unclear what he meant because the

transcription thereafter indicates the testimony was "inaudible":

> Q  Dr. Gibson indicates that she would have to take a 60-
> minute break during the course of the day (INAUDIBLE) return
> to work.  Do you find that to be credible?
> A  Subjectively if the patient, you know, testifies (INAUDIBLE)
> . . . .

(Tr. 544.)  Although the exact meaning of this testimony is unclear, it appears that Dr.

Weillepp agreed with some of Dr. Gibson's RFC analysis regarding diabetes-related

symptoms:

> Q  So your experience is different than Dr. Gibson's as far as
> what an individual of this age and background should be able
> to do.  Is that what you're saying?
> A  Yes, Your Honor, with the exception that if there's testimony
> or documentation on what she says is recent, it's not unusual
> from the insulin sliding scale and it's marginally controlled and
> could impact (INAUDIBLE) recent issues (INAUDIBLE)
> diabetes only.  (INAUDIBLE) both in June of '02 and also the
> new records that were just handed to me which is consistent
> with those comments (INAUDIBLE).

(Tr. 543-44.)  In addition, Dr. Weillepp stated that he could not estimate how many days

of work per month Beardsley might miss due to her condition.  (Tr. 544.)

18

Yet notwithstanding the lack of written discussion rejecting the blood sugar evidence and Beardsley's need for daily breaks of sixty minutes or absences, and the existence of uncontradicted evidence supporting such needs, no limitations regarding breaks each afternoon or days off were included in the ALJ's RFC finding.

For these reasons, the ALJ neglected to build the necessary logical bridge to his RFC finding.

### IV. Obesity and Ailments in Combination

In determining whether impairments are severe, the Administration is to "consider the combined effect of all of [a claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. If a medically severe combination of impairments is found, the combined impact will be considered throughout the determination process. *Id.*

SSR 02-1p provides that the combined effect of obesity with other impairments can be greater than the effects of each of the impairments considered separately. The effects of obesity are to be considered when assessing impairments as well as when assessing an individual's RFC. SSR 02-1p. For instance, in *Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir. 2004), the court remanded because the ALJ failed to discuss the effect obesity had on the claimant's arthritis and her ability to stand.

Here, the ALJ found that medical evidence established that Beardsley is obese, and he recognized that the combined effect of obesity with other impairments can be greater than the effects of each considered separately. (Tr. at 19-20.) He even cited SSR 02-1p. However, he did not discuss how he applied it. The ALJ did not address the impact Beardsley's obesity has on her other conditions. Instead, he stated that "obesity

19

is a treatable condition and a medical condition that can reasonably be remedied by surgery, treatment, or medication," so it is not disabling, citing to a Fifth Circuit case from 1987. (Tr. at 23.)

That obesity is a treatable and remediable condition in many cases or in the opinion of judges in the Fifth Circuit in 1987 does not sufficiently support a finding that Beardsley's obesity is so treatable and remedied. *See Barrett*, 355 F.3d at 1068 ("Barrett's obesity, however, is due not to gluttony but to a medical condition, hypothyroidism . . . . [A]s in *Dodrill*, and such other cases . . . Barrett's obesity has not been shown to be remediable."). The ALJ pointed to no medical evidence indicating that Beardsley's obesity can be remedied or any attendant risks associated with such treatment. Regardless, Beardsley testified that her obesity problems began when she switched to insulin, thereby suggesting that her obesity is related to her diabetes and medication for it. Further, Beardsley's medical records include a conclusion from a Dr. Kim Hansen that "[a]ggravating the patient's pain is her state of being overweight and relative inactivity." (Tr. 179.)

As importantly, the ALJ failed to discuss how Beardsley's obesity impacts her shoulder problems, cardiovascular disease, back pain, diabetes, and depression. Nor did he discuss how obesity impacts (or does not) Beardsley's RFC. SSR 02-1p indicates that an ALJ should assess the effect of obesity on the individual's ability to perform movements and physical activity, and recognizes that obesity may affect the ability to sustain a function over time. Nevertheless, the ALJ did not mention how obesity impacts Beardsley's back pain, ability to stand or sit for a length of time, daily activities, or ability to manipulate objects with her hands or fingers, for instance.

20

## V.  Step Five Analysis

All of the above impacts the step-five analysis.  For instance, if Beardsley's need for daily breaks of an hour or four absences a month are accepted, according to the vocational expert no jobs are available to her.  (*See* Tr. 553-54, 559-60.)  Because the ALJ's RFC determination is invalid due to the above errors, the finding that other jobs exist in the economy for Beardsely cannot stand.  Consequently, the court need not address Beardsley's argument that the jobs the vocational expert named are not consistent with the ALJ's RFC.

## CONCLUSION

Now, therefore,

IT IS ORDERED that Plaintiff's Motion for Leave to File Excess Pages (Doc. # 12) is granted, the Commissioner's Motion to Strike (Doc. # 14) is denied, and the Commissioner's Motion for Extension of Time (Doc. # 13) is granted.

IT IS FURTHER ORDERED that this case is reversed and remanded to the Commissioner for further proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. § 405(g).

Dated at Milwaukee, Wisconsin, this 30th day of June, 2010.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
CHIEF U. S. DISTRICT JUDGE

21